**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**


| | | |
|---|---|---|
| AMERICAN ACADEMY OF IMPLANT | § | |
| DENTISTRY, et al, | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| v. | § | No. 1:14-CV-191-SS |
| | § | |
| GLENN PARKER, Executive Director of the | § | |
| Texas State Board of Dental Examiners, et al., | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| THE TEXAS SOCIETY OF ORAL AND | § | |
| MAXILLOFACIAL SURGEONS, | § | |
| | § | |
| Defendant-Intervenor | § | |
| | § | |

## THE TEXAS SOCIETY OF ORAL AND MAXILLOFACIAL SURGEONS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 2

        A.      THE PARTIES.................................................................................................. 2

        B.      THE REGULATORY SCHEME ...................................................................... 3

        C.      THE FIRST LAWSUIT.................................................................................... 4

        D.      THE AMERICAN DENTAL ASSOCIATION'S RECOGNITION OF
                DENTAL "SPECIALTIES" ............................................................................. 5

III.    SUMMARY JUDGMENT STANDARD .................................................................... 7

IV.     ARGUMENT............................................................................................................... 8

        A.      PLAINTIFFS' FREE SPEECH CLAIM FAILS THE CENTRAL
                HUDSON TEST ................................................................................................ 8

                1.      Plaintiffs' proposed advertising is potentially misleading and
                        therefore must satisfy the remaining Central Hudson criteria. .................. 9

                2.      The State of Texas has a substantial interest in protecting its
                        citizens from misleading "specialist" claims. .......................................... 11

                3.      The Advertising Regulation directly advances the State's
                        governmental interest in protecting its citizens from misleading
                        speech........................................................................................................ 12

                4.      The Advertising Regulation is appropriate and no more extensive
                        than necessary to protect the State's interest. ......................................... 16

        B.      PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS AS A MATTER
                OF LAW .......................................................................................................... 18

        C.      PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF
                LAW ................................................................................................................ 20

IV.     CONCLUSION.......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

<small>CASES</small>

*Abramson v. Gonzalez,*
    949 F.2d 1567 (11th Cir. 1992) ........................................................................16, 17

*Adams v. Tex. State Bd. of Chiropractic Examiners,*
    744 S.W.2d 648, 652-53 (Tex. App.—Austin 1988, no writ) .................................21

*Am. Acad. of Pain Mgmt. v. Joseph,*
    353 F.3d 1099 (9th Cir. 2004) ................................................................... passim

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................................7

*Ass'n of Nat'l Advertisers, Inc. v. Lungren,*
    44 F.3d 726 (9th Cir. 1994) ........................................................................ passim

*Authentic Beverages Co. v. Texas Alcoholic Beverage Comm'n,*
    835 F. Supp. 2d 227 (W.D. Tex. 2011)..................................................................19

*Borgner v. Brooks,*
    284 F.3d 1204 (11th Cir. 2002) ................................................................... passim

*Borgner v. Cook,*
    33 F. Supp. 2d 1327 (N.D. Fla. 1998).....................................................................16

*Celotex Corp. v. Catrett,*
    477 U.S. 322 (1986)................................................................................................7

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
    447 U.S. 557 (1980)................................................................................... passim

*County of Sacramento v. Lewis,*
    523 U.S. 833 (1998)..............................................................................................20

*Does v. Munoz,*
    507 F.3d 961 (6th Cir. 2007) ...............................................................................20

*Edenfield v. Fane,*
    507 U.S. 761 (1993)..............................................................................................11

*Educational Media Co. at Virginia Tech, Inc. v. Swecker,*
    602 F.3d 583 (4th Cir. 2010) ...............................................................................12

*Falanga v. State Bar of Ga.,*
    150 F.3d 1333 (11th Cir. 1998) ...........................................................................14

*F.C.C. v. Beach Commc'ns,*
    508 U.S. 307 (1993)........................................................................................19

*Fla. Bar v. Went For It, Inc.,*
    515 U.S. 618 (1994)........................................................................................11

*Friedman v. Rogers,*
    440 U.S. 1 (1979)........................................................................................9, 18

*Gibson v. Texas Dep't of Ins.,*
    700 F.3d 227 (5th Cir. 2012) ............................................................................18

*In re R.M.J.,*
    455 U.S. 191 (1982)....................................................................................9, 11

*Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n,*
    24 F.3d 754 (5th Cir. 1994) ..............................................................................11

*Kiser v. Reitz,*
    2015 WL 1286430 (S.D. Ohio Mar. 20, 2015)...............................................20, 22

*Lindquist v. City of Pasadena,*
    525 F.3d 383 (5th Cir. 2008) ............................................................................22

*Locke v. Shore,*
    634 F.3d 1185 (11th Cir. 2011) .........................................................................18

*Lorillard Tobacco Co. v. Reilly,*
    533 U.S. 525 (2001)........................................................................................12

*Lowe v. Scott,*
    959 F.2d 323 (1st Cir. 1992)..............................................................................22

*Matsushita Elec. Indus. Co. v. Zenith Radio,*
    475 U.S. 574 (1986)..........................................................................................7

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology,*
    228 F.3d 1043, 1046 (9th Cir. 2000) ..................................................................19

*Parker v. Commonwealth of Ky. Bd. of Dentistry,*
    818 F.2d 504 (6th Cir. 1987) ............................................................................17

*Parmley v. Missouri Dental Bd.,*
    719 S.W.2d 745 (Mo. 1986) ....................................................................... passim

*Peel v. Attorney Registration & Disciplinary Comm'n of Ill.,*
    496 U.S. 91 (1990)..........................................................................................16

iii

*Pub. Citizen Inc. v. La. Attorney Disciplinary Bd.*,
    632 F.3d 212 (5th Cir. 2011) .................................................................................11, 12

*Ragas v. Tenn. Gas Pipeline Co.*,
    136 F.3d 455 (5th Cir. 1998) ...................................................................................8

*Ramirez v. Ahn*,
    843 F.2d 864 (5th Cir. 1988) .................................................................................22

*Seay v. Campbell*,
    2005 WL 1023400 (10th Cir. May 3, 2005) .........................................................21

*Sherman v. State Bd. of Dental Examiners*,
    116 S.W.2d 843, 844-47 (Tex. Civ. App.—San Antonio 1938, writ ref'd) ...........21

*Simm v. Louisiana State Bd. of Dentistry*,
    2002 WL 63538 (E.D. La. Jan. 16, 2002) ..............................................................1

*Speaks v. Trikora Lloyd P.T.*,
    838 F.2d 1436 (5th Cir. 1988) .................................................................................7

*Strang v. Satz*,
    884 F. Supp. 504 (S.D. Fla. 1995) ........................................................................17

*Topalian v. Ehrman*,
    954 F.2d 1125 (5th Cir. 1992) .................................................................................8

*Willis v. Town of Marshall*,
    426 F.3d 251 (4th Cir. 2005) .................................................................................20

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*,
    471 U.S. 626 (1985)................................................................................................17

**FEDERAL RULES**

Federal Rule of Civil Procedure 56 .............................................................................7

**FEDERAL STATUTES**

42 U.S.C. § 1983 .........................................................................................................8

iv

**STATE STATUTES**

TEXAS ADMINISTRATIVE CODE

§§ 107.22-107.59 ...................................................................................22

§ 108.50.................................................................................................4

§ 108.54.............................................................................................4, 6

§ 108.55............................................................................................5, 16

§ 108.56............................................................................................5, 16

TEXAS OCCUPATIONS CODE

§ 254.001..........................................................................................3, 12

§ 254.002..........................................................................................3, 12

§ 259.005..........................................................................................3, 12

§ 259.006..............................................................................................3

§ 263.002..........................................................................................3, 22

# I.    INTRODUCTION

This lawsuit challenges the constitutionality of a regulation (the "Advertising Regulation") promulgated by the Texas State Board of Dental Examiners ("TSBDE") that delineates nine areas of dental specialty and prohibits dentists from advertising themselves as "specialists" unless they have met certain accreditation requirements.  Oral and maxillofacial surgery is one of nine dental specialties recognized in Texas.  Plaintiffs challenge the Texas Advertising Regulation under the First, Fifth, and Fourteenth Amendments, claiming that the regulation impermissibly treads on their right to hold themselves out as "specialists" in various fields of dentistry, deprives them of equal protection under the law, and deprives them of due process of law.  The Texas Society of Oral and Maxillofacial Surgeons ("TSOMS" or "Defendant-Intervenor")—whose members are oral and maxillofacial surgeons that are permitted to advertise as "specialists"—intervened in the lawsuit to protect the organization, its members, and its members' patients from the harm that would occur if the Advertising Regulation were invalidated.

Plaintiffs' constitutional claims fail as a matter of law for several reasons.  Plaintiffs' First Amendment claim fails because the Advertising Regulation advances a substantial state interest in protecting the public from misleading commercial speech in a manner that is narrowly tailored and constitutionally permissible.  Plaintiffs' equal protection claim fails because Plaintiffs cannot meet their steep burden to prove that there is no conceivable justification for the Advertising Regulation and because the regulation does not treat Plaintiffs unequally under the law.  Plaintiffs' procedural and substantive due process claims fail because Plaintiffs cannot prove that they were deprived of any property interest under the law and cannot show that they have been denied any procedural due process.  Summary judgment against Plaintiffs on all claims is appropriate.

## II.  BACKGROUND

### A.  THE PARTIES

Plaintiffs are four dental organizations and five individual dentists that seek to invalidate the Advertising Regulation in its entirety and to permanently enjoin the TSBDE's enforcement of that regulation.  *See* Original Complaint ("Compl."), Dkt. No. 1.  The organizations are the American Academy of Implant Dentistry ("AAID"), the American Society of Dental Anesthesiologists ("ASDA"), the American Academy of Oral Medicine ("AAOM"), and the American Academy of Orofacial Pain ("AAOP").  *Id.*  The individual plaintiffs are Jay E. Elliott, D.D.S., Monty Buck, D.D.S., Jarom C. Heaton, D.D.S., Michaell A. Huber, D.D.S., and Edward F. Wright, D.D.S.  *Id.*  Defendants are Glenn Parker, as (now former) Executive Director of the TSBDE, and each of the TSBDE's fifteen board members.  *Id.*

TSOMS is an organization comprised of more than 350 active members, all of whom are oral and maxillofacial surgeons who have completed rigorous education and training requirements, who fulfill annual continuing education requirements, and who submit to periodic evaluations to ensure that office procedures and personnel meet stringent national and state standards.  *See* Constitution and Bylaws for TSOMS, "Qualifications," Exh. 1, at pp. 3-4.  Unlike the individual Plaintiffs in this lawsuit, TSOMS' members are dental specialists recognized by the Commission on Dental Accreditation of the American Dental Association ("CODA"), and who qualify to advertise themselves as specialists.[1]  To achieve that recognition, TSOMS members train in a CODA accredited  residency training program for a minimum of four years.

---

[1]  According to CODA's website, "CODA was established in 1975 and is nationally recognized by the United States Department of Education (USDE) as the sole agency to accredit dental and dental-related education programs conducted at the post-secondary level."  *See* CODA, "About Us," *available at* http://www.ada.org/en/coda/ accreditation/about-us/.  Notably, the "Commission functions independently and autonomously in matters of developing and approving accreditation standards, making accreditation decisions on educational programs and developing and approving procedures that are used in the accreditation process.  It is structured to include an appropriate representation of the communities of interest."  *Id.*

*See id.* at 3.  Oral and maxillofacial surgeons have knowledge and expertise that uniquely

qualifies them to diagnose and treat functional and esthetic conditions in the maxillofacial

region.  *Id.*  In addition, oral and maxillofacial surgeons and their staff maintain the highest

safety standards to ensure patients have a safe, comfortable, and medically successful

experience.  *Id.*

### B.     THE REGULATORY SCHEME

The starting point for understanding the Advertising Regulation is the Texas Occupations

Code, promulgated by the Texas Legislature.  In the Texas Occupations Code, the Texas

Legislature charged the TSBDE with adopting and enforcing rules necessary to "ensure

compliance with state laws relating to the practice of dentistry to protect the public health and

safety."  TEX. OCC. CODE § 254.001(a)(2).  In addition, Section 254.002 empowered the TSBDE

to "adopt and enforce reasonable restrictions to regulate advertising relating to the practice of

dentistry by a person engaged in the practice of dentistry as provided by Section 259.005."  TEX.

OCC. CODE § 254.002(b).  Section 259.005, in turn, says that "Board rules adopted . . . to regulate

advertising may include restrictions that prohibit communications to the public" that "are false,

misleading, or deceptive."  TEX. OCC. CODE § 259.005(1).  Finally, Section 259.006 expressly

prohibits any person from engaging in "false, misleading, or deceptive advertising in connection

with the practice of dentistry" and prohibits any "person regulated by the board" from

"engag[ing] in advertising that does not comply with the reasonable restrictions adopted by the

board under Section 259.005."  TEX. OCC. CODE § 259.006(a)-(b).  The Texas Occupations Code

also provides that the TSBDE may take disciplinary action against a dentist for violation of these

advertising restrictions only after "notice and hearing."  TEX. OCC. CODE § 263.002(a)(5).

Pursuant to the power delegated to it by the Texas Legislature, the TSBDE promulgated

the Advertising Regulation, codified in section 108.54 of title 22 of the Texas Administrative

Code, following a public comment period. The objective of that regulation, and all regulations relating to advertising by dentists, is to ensure that all dentists comply with "the duty to communicate truthfully and without deception to the public." Tex. Admin. Code § 108.50(b).

The Advertising Regulation does two main things. First, it lists nine "specialty areas" of dentistry recognized in Texas, one of which is oral and maxillofacial surgery. Tex. Admin. Code § 108.54(b). Those areas of specialty are Endodontics, Oral and Maxillofacial Surgery, Orthodontics and Dentofacial Orthopedics, Pediatric Dentistry, Periodontics, Prosthodontics, Dental Public Health, Oral and Maxillofacial Pathology, and Oral and Maxillofacial Radiology. *Id.* Second, the regulation delineates the requirements that a dentist must satisfy in order to advertise himself as a specialist in one of those specialty areas: (1) successfully complete an education program of two or more years in the specialty area accredited by CODA; or (2) become board certified by a specialty board accredited by CODA and receive a certificate from that specialty board indicating that the dentist has achieved "diplomate status." *Id.* § 108.54(c)(1)-(2).

## C.    THE FIRST LAWSUIT

Prior to 2013, Texas law did not permit a dentist who had taken advance coursework and obtained credentials from a board other than CODA to advertise that certification or training. *See* Original Complaint, *Elliott v. Parker*, No. 1:12-cv-00330-LY (W.D. Tex. Apr. 11, 2012), Dkt. No. 2, ¶¶ 10, 21, 34-35. Several Plaintiffs to this lawsuit previously mounted a legal challenge to the constitutionality of the Texas regulations governing dental advertising. In 2011, Plaintiffs Monty Buck, Jay Elliot, and the AAID, represented by the same attorneys, sued the TSBDE to have those regulations declared unconstitutional. *See generally id.* In that lawsuit, these plaintiffs expressly did not seek to advertise as "specialists," but instead sought "to

- 4 -

advertise truthful statements relating to the credentials they and other dentists have earned from the AAID and [the American Board of Oral Implantology/Implant Dentistry]." *Id.*, ¶ 24.

In response to that lawsuit, the TSBDE amended the Texas Administrative Code in two ways. First, the Board amended section 108.55 to provide that "[a] dentist whose license is not limited to the practice of an ADA recognized specialty identified under § 108.54(b)(1)-(9) . . . may advertise that the dentist performs dental services in those specialty areas of practice, but only if the advertisement also includes a clear disclosure that he/she is a general dentist." TEX. ADMIN. CODE § 108.55(a). Second, the Board adopted a new section 108.56, which provides that "[d]entists may advertise credentials earned in dentistry so long as they avoid any communications that express or imply specialization in a recognized specialty, or specialization in an area of dentistry that is not recognized as a specialty, or attainment of an earned academic degree." TEX. ADMIN. CODE § 108.56(a). Thus, under the amended Texas regulations, general dentists in Texas may advertise that they perform services in a particular area of dental practice and may advertise that they have earned credentials in a particular area, regardless of the certifying board. The only limitation is that any non-specialist dentist must disclose that he or she is a "general dentist." As a direct result of this amendment, the parties stipulated to the dismissal of the lawsuit. Rule 41 Stipulation of Dismissal, *Elliott v. Parker*, No. 1:12-cv-00330-LY (W.D. Tex. filed May 1, 2013), Dkt. No. 20.

## D. THE AMERICAN DENTAL ASSOCIATION'S RECOGNITION OF DENTAL "SPECIALTIES"

The Advertising Regulation does not preclude the recognition of new areas of dental specialty, so long as the specialty is "recognized by a board that certifies specialists in the area of specialty" and is "accredited by the Commission on Dental Accreditation of the American Dental

Association." TEX. ADMIN. CODE § 108.54(a).[2]  However, in promulgating the Advertising

Regulation, the TSBDE chose to explicitly recognize nine areas of dental specialty that presently

are recognized as areas of specialty by the American Dental Association ("ADA").  "Founded in

1859, the not-for-profit [ADA] is the nation's largest dental association, representing more than

157,000 dentist members."  ADA, "About the ADA," *available at* http://www.ada.org/en/about-

the-ada/.  Although Plaintiffs allege that "the ADA is neither a neutral nor an impartial fact-

finder," whose membership competes with Plaintiffs, Plaintiffs themselves are members of the

ADA.  *See* Deposition of Jay Elliott dated Jan. 8, 2015, Exh. 3, at 19:6-8; Deposition of Jarom

Heaton dated Jan. 7, 2015, Exh. 4, at 8:10-12.

Although the ADA currently recognizes only nine areas of dental specialty, there is a

procedure in place for the consideration and recognition of other areas of specialty.  This

procedure has led the ADA to recognize additional dental specialties over the years.  Council on

Dental Education & Licensure, "2011 Periodic Review of Dental Specialty Education and

Practice," Exh. 5, at 3.  An organization seeking specialty status must submit an application to

the Council on Dental Education and Licensure and demonstrate compliance with six criteria to

qualify for specialty status.  ADA, "Requirements for Recognition of Dental Specialties and

National Certifying Boards for Dental Specialties" (Nov. 2013), Exh. 6, at 1-2.  The Council on

Dental Education and Licensure then submits its recommendation to the ADA House of

Delegates, and the delegates vote on whether to approve that application.  *Id.* at 1.

---

[2] As the TSDBE points out in its motion for summary judgment, the statutory requirements are confusing because
CODA accredits educational programs, not specialties.  Defendants' Motion for Summary Judgment, Dkt. No. 46, at
25.  Although it does not matter for purposes of deciding this motion, TSOMS believes that a fair reading of the
statute is that a dentist should achieve CODA accreditation in an area of study recognized by the ADA as a
specialty.  Educational accreditation by CODA is the gold standard in American dentistry and has been "for eons."
*See* Deposition of Kirby Bunel dated Feb. 17, 2015 ("Bunel Dep."), Exh. 2, at 79:18-81:8, 82:6-11.

Plaintiffs are aware of the specialty recognition process and have attempted to invoke it in the past. For example, the AAOP applied for specialty recognition more than a decade ago, but did not obtain that status because it did not at that time meet all of the qualifying criteria. *See* Deposition of Ronald Auvenshine dated Jan. 9, 2015 ("Auvenshine Dep."), Exh. 7, at 9:11-16. The AAOP has not reapplied since that time. *Id.* The AAID also applied for specialty recognition "in the 1990s," but has not reapplied since that time. Deposition of Nicholas Caplanis dated Jan. 9, 2015 ("Caplanis Dep."), Exh. 8, at 48:19-49:16. The ASDA has applied for specialty recognition on four occasions since 1994, the most recent application having been made in 2012. Deposition of Michael Mashni dated Jan. 9, 2015 ("Mashni Dep."), Exh. 9, at 24:19-25:21. Finally, the AAOM has applied for specialty recognition twice, more than a decade ago. Both times its application was unsuccessful. Deposition of Craig Miller dated Jan. 7, 2015 ("Miller Dep."), Exh. 10, at 54:17-55:6.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 322, 323 (1986). Disagreement among the parties as to some of the facts does not prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,  247-48 (1986). To the contrary, summary judgment is precluded under Rule 56 only when the dispute is genuine *and* the disputed facts might affect the outcome of the suit. *Id*.; *Speaks v. Trikora Lloyd P.T.,* 838 F.2d 1436, 1438-39 (5th Cir. 1988).

Once the moving party makes a showing that there is no evidence to support the claims as alleged, the nonmoving party must come forward with some competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "Mere conclusory allegations" are insufficient to defeat summary

judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Instead, the opposing

party "must identify specific evidence in the record" and "articulate the precise manner in which

that evidence supports his claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.

1998).

## IV.    ARGUMENT

Plaintiffs invoke 42 U.S.C. § 1983 to assert three constitutional claims: (1) a First

Amendment free speech claim; (2) an equal protection claim under the Fourteenth Amendment;

and (3) a substantive and procedural due process claim, under the Fifth and Fourteenth

Amendments. For the reasons that follow, each of these claims fails as a matter of law.

### A.    PLAINTIFFS' FREE SPEECH CLAIM FAILS THE *CENTRAL HUDSON* TEST

Plaintiffs initially allege that the Advertising Regulation violates their First Amendment

right to "advertise truthfully" that they are "specialists in their respective areas of expertise."

Compl., ¶ 45. Because the Advertising Regulation at issue regulates "commercial speech"—*i.e.*,

speech "related solely to the economic interests of the speaker and its audience"—Plaintiffs'

claim is subject to intermediate scrutiny. *Central Hudson Gas & Elec. Corp. v. Pub. Serv.

Comm'n*, 447 U.S. 557, 561 (1980); *see also Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099,

1106 (9th Cir. 2004) (concluding that a similar regulation prohibiting medical practitioners from

advertising as "board certified" except under limited circumstances "relate[d] to a specific

product, medical services" and was therefore subject to intermediate scrutiny). In *Central

Hudson*, the Supreme Court articulated a four-part test for evaluating commercial speech under

the First Amendment:

> At the outset, we must determine whether the expression is protected by the First
> Amendment. For commercial speech to come within that provision, it at least
> must concern lawful activity and not be misleading. Next, we ask whether the
> asserted governmental interest is substantial. If both inquiries yield positive

answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Central Hudson*, 447 U.S. at 566. For the reasons that follow, Plaintiffs cannot meet this four-part test, and their First Amendment claim fails as a matter of law.

**1.      Plaintiffs' proposed advertising is potentially misleading and therefore must satisfy the remaining *Central Hudson* criteria.**

Plaintiffs' lawsuit proposes that general dentists be permitted to advertise to the public that they are "specialists" in various fields. The Supreme Court has distinguished between "inherently misleading" speech, which is not entitled to First Amendment protection and not subject to the remaining *Central Hudson* factors, and "potentially misleading" speech, which must satisfy the other *Central Hudson* factors to pass constitutional muster. *See In re R.M.J.*, 455 U.S. 191, 202-03 (1982). Advertising is "inherently misleading" when it is "inherently likely to deceive or where the record indicates that a particular form or method of advertising has in fact been deceptive." *Id.* By contrast, advertising is only "potentially misleading" when "depending on [various] contingencies, use of the regulated term[] may or may not be deceptive." *Ass'n of Nat'l Advertisers, Inc. v. Lungren*, 44 F.3d 726, 731-32 (9th Cir. 1994). When the commercial speech at issue has "no intrinsic meaning" or is "ill-defined," the Supreme Court has recognized that "there is a significant possibility" that such speech "will be used to mislead the public." *Friedman v. Rogers*, 440 U.S. 1, 12-13 (1979) (finding the use of trade names in the advertising of optometry practices potentially misleading).

The record demonstrates that the term "specialist" has "no intrinsic meaning," is "ill-defined," and has a significant potential to mislead the public. As one court explained in evaluating the term "specialist" in a similar free speech case brought by dentists:

> "[S]pecialist" and like terms bear no reliable and intrinsic meaning; the content of a specialty is tied to the educational or other requirements which qualify a

professional to hold himself out as one who specializes. Bereft of standard, the term still may project a high degree of profession on its face, but the underlying qualification is subject to the whims of the user. Thus, to permit this sort of information to "flow freely" would in essence keep consumers ignorant of crucial information which they must and ought to be able to rely on in choosing a dentist . . . . The general public requires some uniform standard of minimal competence, and the ability to rely on *each and every* representation that a particular dentist in fact qualifies as a specialist . . . .

*Parmley v. Missouri Dental Bd.*, 719 S.W.2d 745, 753 (Mo. 1986) (emphasis in original). Were any general dentist able to advertise himself as a "specialist" in Texas based on some "ill-defined" and non-uniform standard, the public would have no way of knowing whether any particular dental "specialist" actually had the educational and training background to perform the particular dental services advertised.

A brief review of Plaintiffs' deposition testimony reveals that not even Plaintiffs agree as to what a "specialist" is or how specialty status should be determined. According to Plaintiff Monty Buck, "[t]here should be a legitimate, codified Certifying Board that has specific and published and accepted standards" that decides who is a specialist. Deposition of Monty Buck dated Jan. 8, 2015 ("Buck Dep."), Exh. 11, at 15:4-16:1. By contrast, AAID representative Nicholas Caplanis testified that certification by a board is not an essential element of becoming a specialist. Caplanis Dep., Exh. 8, at 25:6-14. Instead, he agreed that someone who has "never been given any kind of official recognition as a specialist" could be a "specialist." *Id.* at 25:15-19. When asked how a consumer of dental services would know whether "someone is, in fact, a specialist or is simply calling themselves a specialist without justification," Mr. Caplanis replied: "[t]hat is not at this time of concern" to the AAID. *Id.* at 27:2-18.

Plaintiffs' testimony plainly demonstrates that the term "specialist" is ill-defined and without intrinsic meaning. Courts have held that this alone demonstrates that the speech is not entitled to constitutional protection. *See Am. Acad. of Pain Mgmt.*, 353 F.3d at 1108; *see also*

*Simm v. Louisiana State Bd. of Dentistry*, 2002 WL 63538, at *3 (E.D. La. Jan. 16, 2002)

("Commercial speech is 'inherently' misleading when it is likely to deceive and when it is

'devoid of intrinsic meaning.'") (quoting *Joe Conte Toyota, Inc. v. La. Motor Vehicle Comm'n*,

24 F.3d 754, 756 (5th Cir. 1994)).  But even if the term "specialist" were "merely potentially

misleading, . . . consideration of the remaining three *Hudson* factors confirms that the State may

restrict the use of the term."  *Am. Acad. of Pain Mgmt.*, 353 F.3d at 1107-08.

> **2.    The State of Texas has a substantial interest in protecting its citizens from misleading "specialist" claims.**

The TSBDE easily meets the second *Central Hudson* factor.  The Supreme Court and

federal appellate courts repeatedly have held that states have a "substantial" interest in "ensuring

the accuracy of commercial information in the marketplace."  *See Edenfield v. Fane*, 507 U.S.

761, 769 (1993); *Pub. Citizen Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 220 (5th Cir.

2011) (same); *Am. Acad. of Pain Mgmt.*, 353 F.3d at 1108 ("There is no question that California

has a substantial interest in protecting consumers from misleading advertising by medical

professionals."); *Borgner v. Brooks*, 284 F.3d 1204, 1210-11 (11th Cir. 2002) (holding that state

had a substantial interest in regulating advertisements by dentists).  This is particularly true when

it comes to "advertising for professional services," which the Supreme Court has emphasized is

"especially susceptible to abuses."  *In re R.M.J.*, 455 U.S. at 202.  For this reason, states have

"broad power to establish standards for licensing practitioners and regulating the practice of

professions."  *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1994) (citations omitted).

Indeed, TSOMS is unaware of a single case involving the regulation of commercial speech

regarding medical specialties where the court has not held that the state has a substantial interest in protecting the consuming public.[3]  The second prong of *Central Hudson* is satisfied here.

> ### 3. The Advertising Regulation directly advances the State's governmental interest in protecting its citizens from misleading speech.

The Advertising Regulation also meets the third *Central Hudson* prong as a matter of law.  The fit between the state's interest and the regulation at issue "need not be perfect, but simply reasonable."  *Lungren*, 44 F.3d at 732 (internal quotations omitted).  As the Supreme Court has explained, the speech restriction need only provide something more than "ineffective or remote support" for a legitimate governmental policy goal.  *Central Hudson*, 447 U.S. at 564.  Moreover, the relationship between the regulation and the policy goal "need not be proven by empirical evidence; rather, it may be supported by 'history, consensus, and simple common sense.'"  *Educational Media Co. at Virginia Tech, Inc. v. Swecker*, 602 F.3d 583, 589 (4th Cir. 2010) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001)).  Further, the evidence may "pertain to different locales altogether" and "need not exist pre-enactment."  *Pub. Citizen Inc.*, 632 F.3d at 221 (internal quotations omitted).  Here, the evidence, history, and "simple common sense" all demonstrate the requisite link between the State of Texas' interest in protecting public safety and health and the Advertising Regulation's limits on "specialist" advertising.

The evidence demonstrates indisputably that some restrictions on specialty advertising are necessary to protect the health and safety of Texas consumers of dental services.  Plaintiff Buck acknowledged that he is aware of "instances where general dentists, without any form of specialty, have advertised as implant experts and that [had] been a problem."  Buck Dep., Exh.

---

[3] The Texas Legislature has expressly codified the State's substantial interest:  protecting "the health and safety" of the public from "false, misleading, or deceptive" advertising by licensed dentists.  *See* TEX. OCC. CODE §§ 254.001(2),  254.002(b), 254.005(1).

11, at 46:20-23.  Kirby Bunel, a current TSBDE board member and a practicing oral and maxillofacial surgeon, likewise testified that he is aware of instances where general dentists have performed services in "specialty" areas because "patients will come to [his] practice" after "experiencing a complication" from a specialty procedure performed "in a general dentist's office."  Bunel Dep., Exh. 2, at 67:22-68:12.  TSOMS representative Mark Craig similarly testified that studies comparing health outcomes from implant procedures performed by general dentists versus oral surgeons indicate that the "complication rate was higher for nonspecialists who were placing dental implants."  Deposition of Mark Craig dated Feb. 18, 2015 ("Craig Dep."), Exh. 12, at 110:18-111:8.  This type of anecdotal evidence demonstrating that consumers might be (and in fact are) misled into using general dentists for complex procedures that specialists are more qualified to perform is alone sufficient to demonstrate the requisite link between the State of Texas' interest in protecting public health and the Advertising Regulation's restrictions on commercial speech.  *See Lungren*, 44 F.3d at 733 (citing anecdotal evidence about "instances of advertisers making marketing claims containing misleading" information and consumer behavior as sufficient evidence to support *Central Hudson*'s third prong).

The history of regulation and consumer experience in other states also confirms that the Advertising Regulation materially advances the State's interest in protecting the public from misleading specialist advertising.  As former TSBDE Executive Director, Julie Hildebrand, testified, the Board relied on the experiences of other states in their regulation of dental advertising in developing the Advertising Regulation for Texas.  Deposition of Julie Ann Caylor Hildebrand dated Oct. 2, 2014 ("Hildebrand Dep."), Exh. 13, at 128:16-129:1, 130:11-17.  In fact, several other states have passed regulations restricting dental advertising based on their

conclusion that such regulations materially advance those states' interest in protecting public health. *See, e.g.*, *Borgner*, 284 F.3d at 1212; *Parmley*, 719 S.W.2d at 752-53.

Moreover, empirical data gathered by other states demonstrates that the moniker "specialist" connotes a particular meaning in the minds of consumers. *See, e.g.*, *Borgner*, 284 F.3d 1212. Based on this data, the *Borgner* court concluded:

> (1) that a substantial portion of the public is misled by AAID and implant dentistry advertisements that do not explain that AAID approval does not mean ADA or Board approval; and (2) that ADA certification is an important factor in choosing a dentist/specialist in a particular practice area for a large portion of the public.

*Id.* at 1213. The very same concerns exist here, and the Advertising Regulation addresses those concerns by limiting use of the word "specialist" to those dentists who have obtained certification in an ADA-recognized specialty.

Further, the ADA's own views support the TSBDE's view that restriction of "specialist" advertising is necessary to protect the consuming public. The ADA's Rules of Ethical Conduct expressly prohibit dentists from advertising as specialists except under limited circumstances:

> This section and Section 5.I are designed to help the public make an informed selection between the practitioner who has completed an accredited program beyond the dental degree and a practitioner who has not completed such a program. The dental specialties recognized by the American Dental Association and the designation for ethical specialty announcement and limitation of practice are: dental public health, endodontics, oral and maxillofacial pathology, oral and maxillofacial radiology, oral and maxillofacial surgery, orthodontics and dentofacial orthopedics, pediatric dentistry, periodontics and prosthodontics. . . . Dentists who use their eligibility to announce as specialists to make the public believe that specialty services rendered in the dental office are being rendered by qualified specialists when such is not the case are engaged in unethical conduct.

ADA, Principles of Ethics and Code of Professional Conduct, Exh. 14, § 5.H. Where, as here, a national professional organization governing the profession at issue has indicated that restriction on professional advertising is necessary to protect consumers, the federal courts have held that such "consensus" supports the state's regulation. *See, e.g., Falanga v. State Bar of Ga.*, 150 F.3d

1333, 1341-42, 1347 (11th Cir. 1998) (upholding constitutionality of state regulation prohibiting attorneys from engaging in in-person uninvited solicitation of prospective clients).

Finally, it is just "common sense" that the Advertising Regulation materially advances the State's interest in protecting the public from misleading information regarding dental services. Again, the fit between the regulation and the state's interest need not be "perfect," but just "reasonable." *Lungren*, 44 F.3d at 732 (internal quotations omitted). Plaintiffs themselves have testified that there needs to be some standard for determining whether a particular practitioner is a specialist in a particular field. *See, e.g.*, Buck Dep., Exh. 11, at 15:4-16:1; Deposition of Michaell Huber, Exh. 15, at 19:10-20; Mashni Dep., Exh. 9, at 20:20-21:2. In addition, as TSOMS representative Mark Craig testified, CODA provides a "yardstick to determine whether [a specialty] meets standardized educational criteria." Craig Dep., Exh. 12, at 27:11-28:11. CODA is the only widely-known organization identified by any party with standardized means to determine whether a particular individual is a specialist. As Dr. Craig explained, without relying on CODA approval, it would be impossible to compare one specialty program to another to ensure that adequate training is being provided to those intending to become specialists in their field, particularly in oral surgery. *Id*. at 29:12-22.

It was thus reasonable for the TSBDE to adopt the ADA's definition of "specialist" because the ADA has been regulating the field of dentistry for decades, is an organization to which a substantial percentage of all practicing dentists belong, and has definitive professional standards for recognizing and regulating specialty dental practices. The Advertising Regulation's limitation on specialist advertising is, at a minimum, a "reasonable" regulatory device for protecting the consuming public from misleading dental advertisements.

### 4. The Advertising Regulation is appropriate and no more extensive than necessary to protect the State's interest.

The Advertising Regulation at issue also meets *Central Hudson*'s last requirement because it represents a reasonable means to protect the public from potentially misleading "specialist" claims by general dentists.[4]

Here, unlike those cases where the regulation at issue posed constitutional problems, the regulatory scheme does not impose an outright ban on Plaintiffs' advertisement of their non-ADA credentials. *Compare Abramson v. Gonzalez*, 949 F.2d 1567, 1570-73 (11th Cir. 1992) (striking down regulation banning unlicensed psychologists from advertising using nearly twenty different terms, such as "social worker," "therapist," and "counselor"); *Peel v. Attorney Registration & Disciplinary Comm'n of Ill.*, 496 U.S. 91, 110 (1990) (reversing judgment upholding regulation that "completely ban[ned]" attorneys from advertising specialty certification). Instead, Texas' regulation merely limits the use of the word "specialist" and requires that dental practitioners who have not complied with the Advertising Regulation's requirements for specialty status disclose that they are "general dentists." TEX. ADMIN. CODE § 108.55(a), § 108.56(a).

Numerous courts have upheld the constitutionality of precisely this type of regulation. For example, in *Borgner*, the plaintiffs—general dentists with accreditation from various non-ADA dental organizations—similarly complained that Florida's advertising regulation violated the First Amendment. 284 F.3d at 1206-07.[5] That regulation permitted general dentists to

---

[4] Notably, the TSBDE need not demonstrate that the Advertising Regulation is "the least restrictive means available" to protect the State's interest in protecting the public from misleading dental advertising. *Fla. Bar*, 515 U.S. at 362.

[5] Notably, the *Borgner* plaintiffs, represented by the same law firm representing Plaintiffs here, also filed a prior lawsuit challenging the state's outright ban on advertisement of non-ADA specialty credentials as unconstitutional (as certain Plaintiffs did here). *See Borgner v. Cook*, 33 F. Supp. 2d 1327, 1327 (N.D. Fla. 1998). The district court found the state regulation unconstitutional, *id.* at 1333, prompting the Florida legislature to amend the law to permit

advertise that they had obtained credentials from an organization other than the ADA but required that the advertisement disclose that the credentialing organization was not state-approved. *Id.* at 1207. The district court struck down the regulation as unconstitutional, and the Eleventh Circuit Court of Appeals reversed. *Id.* at 1207, 1216. In analyzing the fourth *Central Hudson* factor, the Court of Appeals held that the "disclaimer requirements" were "no more extensive than necessary to serve the state's interest in 'protecting its citizens from unqualified and incompetent health care professionals,' and establishing standards and uniform criteria for the certification of its licensed dentists." *Id.* at 1213-14 (quoting *Strang v. Satz*, 884 F. Supp. 504, 508 (S.D. Fla. 1995)). Other courts similarly have concluded that disclaimer language of the type required under the Texas advertising regulations meets the fourth prong of the *Central Hudson* test. *See, e.g.*, *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 651 (1985) ("disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech"); *Abramson*, 949 F.2d at 1577 (suggesting that a disclaimer is a constitutional alternative to an outright ban); *compare Parker v. Commonwealth of Ky. Bd. of Dentistry*, 818 F.2d 504, 510 (6th Cir. 1987) (finding unconstitutional an "outright prohibition" on certain dental advertising and noting that a "disclaimer" would have "adequately address[ed] the state's concern").

As in *Borgner*, the TSBDE's current regulatory scheme reasonably permits dentists without ADA specialty status to advertise their credentials in their particular areas of expertise and merely requires that they disclose they are "general dentists" instead of "specialists." The fourth *Central Hudson* factor is met.

---

such advertisement under certain conditions. *Borgner*, 284 F.3d at 1207. The *Borgner* plaintiffs, again represented by the same plaintiffs' firm, then again sued the state, arguing that the amended regulations similarly violated the First Amendment. *Id.* at 1206-07. The Eleventh Circuit Court of Appeals reversed the district court's summary judgment ruling in favor of the plaintiffs and directed the court to grant the State's cross-motion for summary judgment on the basis that the regulation did not violate the First Amendment. *Id.* at 216.

### B. PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS AS A MATTER OF LAW

Plaintiffs also allege that the Advertising Regulation "creates discriminatory classifications between dentists who have obtained designations as ADA-recognized specialists and those who have obtained professional dental credentials in an area of dentistry not recognized by the ADA as a specialty." Compl., ¶ 51. According to Plaintiffs, this discriminatory classification denies them equal protection under the law. Plaintiffs are wrong.

Plaintiffs cannot meet their steep burden to prove their equal protection claim. As the Supreme Court has held, "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, [the Court's] decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *Friedman*, 440 U.S. at 17. Plaintiffs have no "fundamental right" to advertise themselves as specialists and so the Advertising Regulation, and the distinction between general dentists and specialists certainly is not "drawn upon inherently suspect distinctions." *See Parmley*, 719 S.W.2d at 754-55 ("[A]ppellant's practice of dentistry cannot be said to be a fundamental right, thus the 'right' to announce his specialty in pedodontics is not fundamental. Neither can it be said that the classification draws upon some 'inherently suspect distinctions such as race, religion, or alienage."). Accordingly, the Advertising Regulation is subject only to rational basis scrutiny for purposes of Plaintiffs' equal protection claim.[6]

---

[6] Plaintiffs previously have claimed that their equal protection claim should be evaluated using "intermediate scrutiny" because First Amendment concerns are also at issue. Plaintiffs' Response to Defendants' Motion for Partial Dismissal, Dkt. No. 11, at 6-7. This is wrong. The Fifth Circuit has held that equal protection challenges to state regulation are subject to rational basis scrutiny, even where the plaintiff also challenged the regulation under the First Amendment. *See Gibson v. Texas Dep't of Ins.*, 700 F.3d 227, 232, 238-39 (2012) (dismissing plaintiff's equal protection challenge to a state law prohibiting use of a particular domain name in plaintiff's legal practice); *accord Locke v. Shore*, 634 F.3d 1185, 1189, 1195-96 (11th Cir. 2011) (where plaintiffs challenged state licensing requirement under the First and Fourteenth Amendments, holding that "[r]ational basis review applies to Due

Under rational basis scrutiny, the Advertising Regulation is "presumed constitutional," and it is Plaintiffs' burden to prove that there is no "conceivable basis which may support [the regulation], whether or not the basis has a foundation in the record." *Authentic Beverages Co. v. Texas Alcoholic Beverage Comm'n*, 835 F. Supp. 2d 227, 248 (W.D. Tex. 2011) (quoting *F.C.C. v. Beach Commc'ns*, 508 U.S. 307, 321 (1993)). This is commensurate with the Supreme Court's warning that "'equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Id.* (quoting *Beach Commc'ns*, 508 U.S. at 313). There is ample evidence in this record demonstrating that the TSBDE had a rational basis for adopting the Advertising Regulation. The TSBDE reasonably concluded that communications to the public about a dentists "specialty" status should be tied to some recognizable standard. The ADA is a nationally recognized organization with dentists members all over the state and country. *See* ADA, "About the ADA," *available at* http://www.ada.org/en/about-the-ada/. And CODA has been accrediting dentists as specialists "for eons." Bunel Dep., Exh. 2, at 79:18-81:8, 82:6-11. At the very least, there was a rational basis for the TSBDE to choose CODA standards for recognition of dental specialties in Texas.

In any event, because the Advertising Regulation survives intermediate scrutiny under *Central Hudson*, it necessarily survives lesser rational basis scrutiny. *See Parmley*, 719 S.W.2d at 755 ("If under the *Central Hudson* test, the statutory restrictions are found to directly advance the governmental interest and go no further than necessary to do so, then they should survive a minimum level of scrutiny under traditional rational basis analysis."). Plaintiffs' equal protection challenge should be rejected as a matter of law.

---

Process and Equal Protections Clause challenges to state professional regulations, because the right to practice a particular profession is not a fundamental one."); *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1046, 1050 (9th Cir. 2000) (analyzing equal protection claim using rational basis scrutiny, even though plaintiffs challenged the state regulation under the First Amendment as well).

## C. PLAINTIFFS' DUE PROCESS CLAIM FAILS AS A MATTER OF LAW

Finally, Plaintiffs claim that the Advertising Regulation violates their procedural and substantive due process rights under the Fifth and Fourteenth Amendments because the regulation (1) deprives them of a "State mechanism to evaluate the professional dental credentials earned by dentists in areas of dentistry not recognized by the ADA as specialists;" (2) deprives them of "any mechanism for appealing the TSB[D]E's denial of recognition of any credentialing organization or any areas of dental practice not declared to be specialty areas of practice by the ADA;" and (3) deprives them of "any right to a neutral and impartial fact-finder, resulting in arbitrary and capricious decisions." Compl., ¶¶ 48-49. As explained below, each of these due process claims is meritless and should be rejected as a matter of law.

Plaintiffs' substantive due process claim fails for at least two reasons. Substantive due process is "the doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Kiser v. Reitz*, 2015 WL 1286430, at *4 (S.D. Ohio Mar. 20, 2015) (quoting *Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007)). Plaintiffs' substantive due process claim fails at the outset because it is entirely duplicative of their equal protection and First Amendment claims.[7] "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims." *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *Willis v. Town of Marshall*, 426 F.3d 251, 256 (4th Cir. 2005) (same). Plaintiffs' substantive due process claim is merely an attempt to "recast" their First Amendment claim in "substantive due process terms" and should be rejected on this basis alone. *Lindquist v.*

---

[7] The Court has previously noted the "significant overlap" in Plaintiffs' First Amendment and due process claims. Order dated June 20, 2014, Dkt. No. 23, at 9.

*City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008) (affirming dismissal of due process claim that simply "recast" an equal protection claim "in substantive due process terms").

Plaintiffs' substantive due process claim also fails because Plaintiffs have not identified any "deprivation" that has occurred. *Lowe v. Scott*, 959 F.2d 323, 334 (1st Cir. 1992). The only property interest Plaintiffs point to is their license to practice dentistry. It is undisputed that no Plaintiff has been deprived of their dental license or faced any actual threat of such deprivation as a result of the Advertising Regulation. *Cf. Seay v. Campbell*, 2005 WL 1023400, at *4 (10th Cir. May 3, 2005) (questioning whether plaintiff was "deprived" of property interest in his medical license when State Board chose not to revoke his license). To the contrary, the individual Plaintiffs all are currently practicing dentists in their respective areas of focus. To the extent that Plaintiffs complain that they unable as a result of the Advertising Regulation to engage in certain activities involving their dental practices—like advertising—that is not the type of deprivation that runs afoul of the Due Process Clause. *See Sherman v. State Bd. of Dental Examiners*, 116 S.W.2d 843, 844-47 (Tex. Civ. App.—San Antonio 1938, writ ref'd) (licensed dentists are subject to the "power of the state to regulate and circumscribe the character of advertising of their professional services"); *Adams v. Tex. State Bd. of Chiropractic Examiners*, 744 S.W.2d 648, 652-53 (Tex. App.—Austin 1988, no writ). Nor is there any evidence that any organizational Plaintiff has suffered any "deprivation," or that the organizations even have a property interest that could be constitutionally protected. Absent evidence of a "deprivation" of a protectable interest, there can be no substantive due process violation.

Plaintiffs' procedural due process claim fails for the same reason. To prove a violation of procedural due process, Plaintiffs must demonstrate that the State's enforcement of the Advertising Regulation deprives them of a property interest without due process of law—

usually, notice and an opportunity to be heard.  *See Ramirez v. Ahn*, 843 F.2d 864, 867 (5th Cir. 1988).  Again, Plaintiffs cannot meet the threshold requirement that they demonstrate the Advertising Regulation "deprived [them] of a cognizable property interest." [8]

To the extent that Plaintiffs' procedural due process claim is based on their allegation that the TSBDE has improperly delegated power to the ADA to determine whether Plaintiffs are specialists, that claim fails as well.  This is precisely the argument made by the plaintiff in *Kiser v. Reitz*, which was rejected by the District Court for the Southern District of Ohio.  2015 WL 1286430, at *4-5.  As that court explained, the "ADA merely publishes a list of specialties, and individual states have the opportunity to use that list for lawmaking purposes."  *Id.* at *5.  That is precisely what the TSBDE chose to do here in promulgating the Advertising Regulation.  Thus it is Texas law, and not rules imposed by the ADA, "that limits Plaintiff[s]" from designating themselves as specialists in their advertising.  Plaintiffs, like the plaintiff in *Kiser*, nevertheless argue that the ADA does not provide a fair opportunity for them to obtain specialty recognition.

That is both irrelevant and wrong.  The relevant inquiry is whether Plaintiffs have "the right to participate in [the TSBDE's] rulemaking process or to petition *the Board* to amend its rules."  *Id.* (emphasis in original).  There is no question that the TSBDE's rules afford Plaintiffs that opportunity, which former executive director Julie Hildebrand confirmed.  *See* TEX. ADMIN. CODE §§107.60-107.62; Hildebrand Dep., Exh. 13, at 165:14-25.  There is no denial of procedural due process under these circumstances.

Plaintiffs' argument regarding the ADA is also wrong.  It is undisputed that the ADA does have procedures in place for recognition of additional specialty areas of practice.  Plaintiffs testified that they understand these procedures but have not recently invoked them.  For example,

---

[8] If the individual Plaintiffs ever did face disciplinary action by the TSBDE for violating the Advertising Regulation, they would be entitled to notice and a hearing before any suspension or revocation of their dental licenses occurred. *See* TEX. ADMIN. CODE § 107.22-107.59; TEX. OCC. CODE § 263.002(a)(5).

the AAOP, AAID, and AAOM have not applied for specialty recognition in more than a decade. Auvenshine Dep., Exh. 7, at 9:11-16; Caplanis Dep., Exh. 8, at 48:19-49:16; Miller Dep., Exh. 10, at 54:17-55:6. And the ASDA has not applied for specialty recognition since 2012. Mashni Dep., Exh. 9, at 24:19-25:21. Plaintiffs may not like the ADA's procedures, but that has nothing to do with whether they have procedural protections under the regulations promulgated by the State of Texas. They do, and their due process claim should be dismissed as a matter of law.

## III.    CONCLUSION

Plaintiffs ask this Court to strike down and enjoin enforcement of the Advertising Regulation even though all parties agree that some regulation of specialist advertising is reasonable and necessary to protect Texas consumers of dental services. The TSBDE has already amended the regulation to permit advertising of Plaintiffs' credentials and to comport with other states' restrictions on dental advertising that have been held constitutional. What Plaintiffs are really complaining about is that the ADA does not recognize their areas of practice as specialties, but that is not something that the TSBDE can or should control. If Plaintiffs want to be recognized as specialists, they should utilize the procedures available to them to obtain recognition by the ADA, or they should seek additional education, training, and experience in actual specialty areas recognized by their colleagues. The Advertising Regulation imposes reasonable restrictions on dental advertising and materially advances the State's interest in protecting consumers from misleading commercial speech. Summary judgment should be entered against Plaintiffs on all claims.

Dated: April 10, 2015                            Respectfully submitted,


/s/ Amy L. Rudd
Amy L. Rudd (TX Bar No. 24043561)
Dechert LLP
300 West 6th Street
Suite 2010
Austin, TX  78701-3902

*Counsel for Proposed Defendant-Intervenor*
*The Texas Society of Oral and Maxillofacial*
*Surgeons*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 10, 2015, I served a true and correct copy of the foregoing via the Court's ECF system on all counsel of record.

/s/ Lindsey B. Cohan_____
Lindsey B. Cohan