**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

FILED

2016 JAN 21  PM 2: 32

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**AMERICAN ACADEMY OF IMPLANT
DENTISTRY** *et al.,*
                    **Plaintiffs,**

-vs-                                            **Case No.  A-14-CA-191-SS**

**GLENN PARKER, Executive Director, Texas
State Board of Dental Examiners,** *et al.,*
                    **Defendants,**

-vs-

**TEXAS SOCIETY OF ORAL AND
MAXILLOFACIAL SURGEONS,**
                    **Intervenor Defendant.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants' Motion For Summary Judgment [#46], Plaintiffs' Response [#54] thereto, Defendants' Reply [#59] in support; Plaintiffs' Motion for Summary Judgment [#47]; Defendants' Response [#55] thereto; Intervenor Defendant's Response [#56] thereto; Plaintiffs' Reply [#61] in support; Plaintiffs' Supplement [#64]; Defendants' Response [#65] thereto; Intervenor Defendant's Motion for Summary Judgment [#53]; Plaintiffs Response [#54] thereto; and Intervenor Defendant's Reply [#60] in support.  Having considered the parties' arguments, and having reviewed the documents, the relevant law, and the file as a whole, the Court now enters the following opinion and orders GRANTING IN PART and DENYING IN PART each of the parties' motions for summary judgment.



## Background

In 2012, Dr. Jay E. Elliot, Dr. Monty Buck and the American Academy of Implant Dentistry (AAID) sued the executive director and members of the Texas State Board of Dental Examiners (State Dental Board) challenging Texas Administrative Code § 108.55, which restricted the plaintiffs from advertising their respective credentials and holding themselves out to the public as "specialists" in the field of implant dentistry. *See Elliot v. Parker*, No. 12-CV-133-LY (W.D. Tex. May 3, 2013). The case was resolved when the State Dental Board revised Rule 108.55 and added a new Rule 108.56, which together allowed credential advertising so long as the advertisements avoided communications expressing or implying a specialization.

Dr. Elliot, Dr. Buck, and the AAID, joined now by three licensed dentists and three private trade organizations, bring this action against the executive director and members of the State Dental Board challenging Texas Administrative Code § 108.54, which prohibits a licensed dentist from advertising as a "specialist" in any area of dentistry not recognized as a "specialty" by the American Dental Association (ADA). Plaintiffs complain this Rule infringes on their First Amendment right to engage in truthful, non-misleading commercial speech and violates their Fourteenth Amendment due process and equal protection rights by impermissibly delegating power over who may advertise as a "specialist" to the ADA, a private organization comprised of members in competition with Plaintiffs and with a direct financial stake who may advertise as "specialists" to the public. The individual Plaintiffs have received training and certification in areas of dentistry represented by the organizational Plaintiffs, but the Rule restricts Plaintiffs from expressing or implying a specialization in these disciplines because they are not ADA-recognized specialties.

The Texas Society of Oral and Maxillofacial Surgeons (TSOMS), a private dentistry organization representing surgeons practicing in an ADA-recognized specialty area, intervened as a party defendant in this case on the grounds invalidating Rule 108.54 would harm the organization, its members, and its members' patients because it would permit less-qualified dentists to advertise as specialists in services traditionally provided by TSOMS members.  The parties have filed cross-motions for summary judgment on each of Plaintiffs' constitutional claims.

## I.      The Challenged Rule in Context: Texas's Regulatory Scheme

The Texas Occupations Code prohibits any person from engaging in "false, misleading, or deceptive advertising in connection with the practice of dentistry" and bars any person regulated by the board from engaging in "advertising that does not comply with the reasonable restrictions adopted by the [State Dental] Board.  *Id.* § 259.006(a).  Consistent with this mandate, the Texas legislature empowered the State Dental Board to adopt and enforce reasonable restrictions prohibiting communications by dentists that are "are false, misleading, or deceptive." *Id.* § 295.005.

Pursuant to this authority, the State Dental Board enacted Rule 108.54, the object of Plaintiffs' constitutional challenge. Rule 108.54 provides that a "dentist may advertise as a specialist or use the terms 'specialty' or 'specialist' to describe professional services in recognized specialty areas that are: (1) recognized by a board that certifies specialists in the area of specialty; and (2) accredited by the Commission on Dental Accreditation of the American Dental Association [CODA]." TEX. ADMIN. CODE § 108.54(a).  The Rule then lists the nine specialty areas recognized by the State Dental Board, which track those specialty areas recognized by the ADA.[1]   *Id.* § 108.54(b).

---

[1] The nine specialties recognized by the ADA are dental public health, endodontics, oral and maxillofacial pathology, oral and maxillofacial radiology, oral and maxillofacial surgery, orthodontics and dentofacial orthopedics, pediatric dentistry, periodontics, and prosthodontics.

To advertise as a specialist in one of the areas recognized by the State Dental Board and the ADA, a dentist must either (a) successfully complete an educational program of two or more years in a specialty area accredited by CODA, or (b) become board certified by a specialty board in a State Dental Board and ADA-recognized specialty area and receive a certificate indicating the dentist has achieved diplomate status. *Id.* § 108.54(c)(1)–(2).

Dentists who do not otherwise qualify as specialists may advertise any service they provide, including those not recognized as specialties, provided the advertisement clearly discloses they are "general dentists" and "does not imply specialization." *Id.* § 108.55.  In addition to listing the services provided, dentists "may advertise credentials earned in dentistry so long as they avoid any communications that express or imply specialization." *Id.* § 108.56.   The State Dental Board is entitled to take disciplinary action against any dentist who violates the Code's or the State Dental Board's advertising restrictions, which include revocation of a person's dental license. TEX. OCC. CODE § 263.002(a).

It is undisputed Rule 108.54 relies on the ADA's list of specialty areas for purposes of determining what constitutes a bona fide dental specialty and has not independently adopted its own standards or criteria. The parties agree Rule 108.54 permits a dentist to advertise as a specialist or refer to his or her area of practice as a specialty *only if* the area of practice is recognized as a specialty area by the ADA.

## II.    The Parties

The Plaintiffs in this case are four private dental organizations—the American Academy of Implant Dentistry (AAID), the American Society of Dentist Anesthesiologists (ASDA), the American Academy of Oral Medicine (AAOM), and the American Academy of Orofacial Pain (AAOP)—and five licensed dentists—Dr. Jay Elliot, Dr. Monty Buck, Dr. Jarom Heaton, Dr.

Michael Huber, and Dr. Edward Wright.  The mission of each of the organizational Plaintiffs is to advance knowledge, skill, and expertise in their respective fields.  To further this goal, each of the organizational Plaintiffs sponsor credentialing boards and award Fellow or Diplomate credentials to members who have demonstrated a measurable expertise in their respective disciplines.  Implant dentistry, dental anesthesiology, oral medicine, and orofacial pain are not "recognized specialty areas that are . . . recognized by a board that certifies specialists in the area of specialty[] and accredited by [CODA]."  TEX. ADMIN. CODE § 108.54(a).  Consequently, neither the ADA nor the State Dental Board recognize implant dentistry, dental anesthesiology, oral medicine, or orofacial pain as "specialties."[2]  Id. § 108.54(b).

The individual Plaintiffs are licensed to practice dentistry in Texas and have all earned credentials from one of the organizational Plaintiffs' credentialing boards.  Three of the individual Plaintiffs—Dr. Elliot, Dr. Buck, and Dr. Heaton—are in private practice, and two of the individual Plaintiffs—Dr. Huber and Dr. Wright—are Professors at the University of Texas Health Science Center School for Dentistry in San Antonio.  Dr. Elliot and Dr. Buck concentrate their private practice in the field of implant dentistry and Dr. Heaton exclusively practices dental anesthesiology.  Dr. Huber and Dr. Wright are Professors of oral medicine and orofacial pain, respectively.  The individual Plaintiffs have developed an expertise in and limit their practice to their given fields, none of which are recognized as dental specialties by the ADA.  Consequently, Plaintiffs are forbidden from advertising as specialists or representing their practice areas are dental specialties.

---

[2] The ADA has denied specialty recognition to dental anesthesiology four times, most recently in 2012.  Since the 1990s, the ADA has twice denied specialty status to oral medicine and has once denied specialty recognition to implant dentistry and orofacial pain.  See Pls.' Mot. Summ. J [#47] at 15–16 n.17.

Defendants are the executive director and members of the State Dental Board, all of whom are sued in their official capacities. Defendants promulgated the challenged Rule and are entrusted with its enforcement.

Intervenor Defendant TSOMS is a private dental organization whose members practice oral and maxillofacial surgery. Because oral and maxillofacial surgery is recognized as a dental specialty by the ADA, TSOMS members who otherwise satisfy Rule 108.54 may advertise in Texas as specialists in oral and maxillofacial surgery.

## III.   Procedural History

Plaintiffs filed their Complaint on March 5, 2014. *See* Compl. [#1]. The Complaint brought claims against Defendants for violations of their First Amendment commercial speech rights, violatoins their Fourteenth Amendment due process and equal protection rights, and for "standardless delegation." *Id.* On March 27, 2014, Defendants filed a Motion for Partial Dismissal under 12(b)(6), seeking dismissal of the due process and equal protection claims. *See* Mot. Partial Dismissal [#7]. On April 9, 2014, Defendants filed a Motion for Partial Judgment on the Pleadings, seeking dismissal of the "standardless delegation" claim. *See* Mot. Partial J. Pleadings [#12]. Concluding there was "significant overlap" amongst the constitutional claims, the Court found Plaintiffs' pleadings were adequate and denied Defendants motions as "premature." *See* June 20, 2014 Order [#23] at 9.

TSOMS filed its Motion to Intervene as Defendant on September 10, 2014, which the Court granted on September 30, 2014. *See* Sept. 30, 2014 Order [#30]. On April 10, 2015, the parties filed cross-motions for summary judgment as to all claims. *See* Defs.' Mot. Summ. J [#46]; Pls.' Mot. Summ. J. [#47]; TSOMS Mot. Summ. J. [#53]. The motions are now ripe for consideration.

### Analysis

The individual Plaintiffs desire to advertise as specialists in their respective fields and use the terms "specialty" or "specialist" to describe the dental services they provide. Plaintiffs contend Rule 108.54 impermissibly restricts their ability to do so because no matter how true the statement, it is unlawful for any dentist to represent to the public he or she is a specialist in any area of dentistry the ADA has declined to recognize. Plaintiffs find this regime particularly offensive because the ADA is a private dental organization whose members who are in direct competition with Plaintiffs and, consequently, have an incentive not to recognize them as specialists. Plaintiffs mount facial and as-applied challenges to Rule 108.54, arguing it violates their First Amendment right to freedom of commercial speech and their Fourteenth Amendment rights to due process and equal protection. Plaintiffs seek a declaration Rule 108.54 is unconstitutional and an injunction against further enforcement of the rule.

Defendants agree Rule 108.54 prohibits Plaintiffs from publicly referring to their practices as "specialties" or to themselves as "specialists" in any advertisement and argue such a rule does not violate the Constitution because such speech would mislead rather than inform the public. The Court will address each claim in turn.

### I.      Summary Judgment—Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## II.      First Amendment

### A.      Legal Standard

It is well-settled that First Amendment protections extend to commercial speech. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 770 (1976). However, commercial speech "merits only 'a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, . . . allowing modes of regulation that might be impermissible in the realm of noncommercial expression. *Pub. Citizen Inc. v. La. Attorney Disciplinary Bd.*, 632 F.3d 212, 218 (5th Cir. 2011) (citing *Ohralik v. Ohio State Bar Assoc.*, 438 U.S. 447, 456 (1978)). Because Plaintiffs' desired advertisement constitutes commercial speech, Rule 108.54 should be analyzed under the framework set forth by the Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557 (1980):

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the government interest asserted, and whether it is more extensive than is necessary to serve that interest.

*Central Hudson*, 447 U.S. at 566. "The party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Ibanez* v. *Fl. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 142 n.7 (1994) (quoting *Edenfield v. Fane*, 507 U.S. 761, 770 (1993)).

### B.      Inherently or Potentially Misleading Speech

First, there can be no dispute Plaintiffs' proposed advertising concerns lawful activity. While Texas does distinguish between specialists and non-specialists for purposes of advertising, a dental license makes no such distinction. A licensed Texas dentist is entitled to limit his or her practice solely to implant dentistry, dental anesthesia, oral medicine, or orofacial pain. *See* Pls.' Resp. [#54]

at 2.  Consequently, expressly advertising themselves as specialists or implying they specialize in any of these fields concerns the provision of lawful dental services.  *Cf. Kiser v. Reitz*, No. 2:12-CV-574, 2015 WL 1286430, at *6–7 (S.D. Ohio Mar. 20, 2015) (rejecting a First Amendment challenge on the grounds that advertising as both a specialist and general dentist would constitute advertisement for an illegal activity where Ohio law bans a specialist from performing general dentistry).

Next, the Court must determine whether the banned speech is misleading, in which case it is not protected by the First Amendment.  *See Fl. Bar v. Went for It, Inc.*, 515 U.S. 618, 623–24 (1995).  In conducting this inquiry, the Supreme Court distinguishes between "inherently misleading" speech and "potentially misleading" speech.  *See In re R.M.J.*, 455 U.S. 191, 202–03 (1982).  Advertising that "is inherently likely to deceive [or] . . . has in fact been deceptive" is not shielded by the First Amendment.  *Id.*  Advertising is only potentially misleading, and therefore protected by the First Amendment, if the "information may also be presented in a way that is not deceptive."  *Id.* at 203.

Defendants argue Plaintiffs' desired speech is "inherently misleading" and therefore is not subject to constitutional review.  According to Defendants, use of the term "specialty" or "specialist" is inherently misleading and can be freely regulated because it has no "intrinsic meaning" and is "ill-defined," and thus has significant potential to deceive the public.  Specifically, TSOMS argues that the terms at issue are inherently misleading because:

> [w]ere any general dentist able to advertise himself as a "specialist" in Texas based on some "ill-defined" and non-uniform standard, the public would have no way of knowing whether any particular dental "specialist" actually had the educational and training background to perform the particular dental services advertised.

TSOMS' Mot. Summ. J. [#53] at 10. However, TSOMS' argument is a red herring. The issue here is not whether the state is entitled to protect consumers from misleading information by conditioning specialty advertisements on meeting some uniform standards of competency; the issue is instead whether the standards chosen by the state are immunized from constitutional review. In this case, it is clear they are not.

In *Peel v. Attorney Registration and Disciplinary Commission of Illinois*, the Supreme Court held an attorney's advertisement listing himself as a "Certified Civil Trial Specialist" after having received certification by the National Board of Trial Advocacy was not actually or inherently misleading. 496 U.S. 91, 110 (1990). The attorney had been censured based on a rule prohibiting lawyers from holding themselves out as "certified" or as a "specialist" in any field other than patent, trademark, or admiralty law. *Id.* In reaching their conclusion, a majority of the justices rejected the Illinois Supreme Court's holding that the attorney's advertisement "was tantamount to an implied claim of superiority of the quality of [his] legal services" or that "his certification as a 'specialist' by an identified national organization necessarily would be confused with formal state recognition." *Id.* at 99–101, 105. Because the letterhead was truthful speech, it was only potentially misleading and could not be categorically banned. *Id.* at 107. However, "[t]o the extent that potentially misleading statements of private certification or specialization could confuse consumers," the Court held that "a State might consider screening certifying organizations or requiring a disclaimer about the certifying organization or the standards of a specialty." *Id.* at 110.

Here, the State Dental Board places a categorical ban on any claim of specialty in a non-ADA-recognized field, arguing that such a claim would necessarily be misleading. This argument is not in line with the teachings of *Peel*. Defendants have produced no evidence of actual deception associated with advertising as specialists in non-ADA-recognized fields, there is no evidence to

suggest any of the Plaintiffs' fields are illegitimate or unrecognized, and there has been no accusation any of the Plaintiffs' organizations are shams.   Other than being inconsistent with the state's definition of the word, there is no reason to believe Plaintiffs' proposed speech is deceptive, untruthful, false, or misleading.   *Peel* flatly rejected the notion that the state, by its own rule, could bar non-ADA-recognized specialists who truthfully hold themselves out as specialists from doing so simply by defining the term "specialty" to include only ADA-recognized fields.

The Court acknowledges there might be cases where this type of speech could be characterized as inherently misleading—for example, if the words "specialty" or "specialist" were terms of art in the dental profession or had some commonly understood meaning among consumers. *See American Bd. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1104–05 (9th Cir. 2004) (finding a physician's use of the term "board certified" inherently misleading where California had adopted specific statutory criteria reflecting the common understanding of the term).   That is not the case here.   There is no indication that the public's recognition of dental specialties is coextensive with the ADA's; the public would hardly feel misled if a licensed AAID diplomate advertised as a "specialist" in implant dentistry and then later discovered the AAID was technically not a "specialty" under Texas law because it had not achieved specialty status according to the ADA.

The Court finds Plaintiffs' desired speech is not inherently misleading and the potential for Plaintiffs' speech to mislead the public is not an adequate justification for its outright ban. To the extent that some risk exists that the public could be misled if Plaintiffs are permitted to represent themselves as specialists, "the preferred remedy is more disclosure, not less." *Bates v. State Bar of Ariz.*, 433 U.S. 350, 375 (1977).   Such a decree is consistent with the purpose of the First Amendment's protection of commercial speech:

> People will perceive their own best interests if only they are well enough informed, and the best means to that end is to open the channels of communication rather than close them. Even when advertising communicates only an incomplete version of the relevant facts, the First Amendment presumes that some accurate information is better than no information at all.

*Central Hudson*, 447 U.S. at 561–62 (quotations and citations omitted).  Consequently, the Court must decide whether Defendants have met their burden of justifying Rule 108.54 by: (1) articulating a substantial government interest; (2) demonstrating the Rule directly advances that interest; and (3) showing the regulations are not more extensive than necessary to advance that interest.

## C.   Whether the Rule Directly Advances the State's Asserted Interest

Combining the first and second prongs, the Court turns to whether Defendants have met their burden of showing that Rule 108.54 directly advances a substantial state interest in a manner no more extensive than necessary to serve that interest. *Ibanez*, 512 U.S. at 142. "Unlike rational basis review, the *Central Hudson* standard does not permit us to supplant the precise interests put forward by the State with other suppositions." *Pub. Citizen*, 623 F.3d at 220 (quoting *Edenfield*, 507 U.S. at 768).  To succeed, "the State must demonstrate the challenged regulations advance the Government's interest in a direct and material way." *Went For It*, 515 U.S. at 625.  To show the Rule materially advances a substantial interest, Defendants must "demonstrate[] that the harms it recites are real and that its restrictions will in fact alleviate them to a material degree." *Edenfield*, 507 U.S. at 771.  This burden "is not satisfied by mere speculation or conjecture." *Id.*  Instead, Defendants must meet their burden with empirical data, studies, and anecdotal evidence or with "history, consensus, and simple common sense." *Went For It*, 515 U.S. at 628.  In any event, "[c]ourts have generally required the state to present tangible evidence that the commercial speech in question is misleading and harmful to consumers before they will find that restrictions on such speech satisfy [this] prong." *Borgner*, 284 F.3d at 1211.  However, the evidence on which the Defendants relies to show the harms Rule

108.54 protects against are real need not "exist pre-enactment," *Pruett v. Harris Cnty. Bail Bond Bd.*, 499 F.3d 403, 410 (5th Cir. 2007), and it may "pertain[] to different locales altogether," *Went For It*, 515 U.S. at 628.

Defendants argue the state has a substantial interest in ensuring the accuracy of commercial information in the marketplace, establishing uniform standards for certification and protecting consumers from misleading professional advertisements. These interests have widely been recognized as substantial. *See, e.g., Borgner*, 284 F.3d at 1216 ("The state has a substantial interest in regulating the dental profession, establishing uniform standards for certification, and in ensuring that dentists' advertisements are not misleading to consumers"). Defendants shoulder the burden of establishing that Plaintiffs' proposed speech is inaccurate or misleading and Rule 108.54 will alleviate their potential harm in a material way. *See Edenfield*, 507 U.S. at 771. Considering the record in this case, and for the following reasons, the Court finds Defendants have failed to satisfy this burden.

Defendants first claim Rule 108.54 rectifies the risk consumers might mistakenly believe a dentist advertising as a specialist in non-ADA recognized specialty field is in fact certified as a specialist by the state or by the ADA, *see* Defs.' Mot. Summ. J. [#46] at 12–13, and would mislead consumers into thinking a certified specialist in a non-ADA recognized specialty area is more qualified than they actually are, *see* TSOMS Mot. Summ. J. [#53] at 12–13. Defendants do not offer any competent evidence to substantiate these fears and admit they did not review any studies, surveys or other evidence regarding the impact of specialty advertisements before promulgating the Rule.[3]

---

[3] Defendants offer a few snippets of deposition testimony stating that general dentists are not as competent as specialists. For example, Dr. Kirby Bunel, a State Dental Board member practicing oral and maxillofacial surgery, acknowledged being aware of instances where patients had come to his practice after experiencing complications from a specialty procedure performed in a general dentist's office. TSOMS' Mot. Summ. J. [#53-2] Ex. 2 at 67:22–68:12. However, this type of vague testimony has nothing to do with whether consumers have been, or will be, misled by non-ADA-recognized specialty advertisements. Indeed, Dr. Bunel later testified "I can't possibly know what a person reading

Instead, Defendants appeal to their own professional judgment and "vast experience dealing with customers of dental services." Defs.' Mot. Summ. J. [#46] at 13. The State Dental Board's collective common sense is not a substitute for the "tangible evidence" required to satisfy this prong of *Central Hudson. See Borgner*, 284 F.3d at 1211; *see also Pagan v. Fruchey*, 492 F.3d 766, 777 (6th Cir. 2007) ("[E]ven common sense decisions require some justification."). "[C]oncern about the possibility of deception in hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment." *Peel*, 496 U.S. at 111.

Mindful of the need to camouflage a bare record, Defendants next argue two telephone surveys cited in *Borgner v. Brooks* are sufficient to discharge their burden. Defendants are incorrect. The surveys referenced in *Borger* were conducted "to demonstrate that the restriction on [specialty] advertising directly addresses an actual harm—specifically, that consumers would think [AAID credentials] were recognized by the state." *Borgner*, 284 F.3d at 1211. These surveys were commissioned by the state for the express purpose of defending a Florida advertising restriction requiring licensed dentists to include a disclaimer next to any advertising of a non-ADA recognized specialty credential, such as a credential from the AAID. Reversing the district court's finding that the surveys were too dubious to meet the evidentiary burden under *Central Hudson*, the Eleventh Circuit stated:

> These two surveys, taken together, support two contentions: (1) that a substantial portion of the public is misled by the AAID and implant dentistry advertisements that do not explain that AAID approval does not mean ADA or Board approval; and (2) that ADA certification is an important factor in choosing a dentist/specialist in a particular practice area for a large portion of the public. From these survey results, it is clear that many consumers find it difficult to make a distinction between AAID and ADA certification, and many consumers find ADA certification of a general or specialized dentist to be extremely important. They are thus misled by

---

an ad would mean, would think" and stated he did not "have any facts to support" what the public would believe when reading any given advertisement. Pls.' Reply [#54-3] Ex. 3 at 77:24–25, 80:5–8.

advertisements like Borgner's, which suggest to them that implant dentistry is an ADA approved specialty or that the AAID is a bona fide accrediting organization. Furthermore, this confusion concerns an issue that is relevant and compelling to a large proportion of consumers.

*Id.* at 1213. The State Dental Board argues these surveys are sufficient evidence "on the question of whether there is a real harm that can be alleviated by restrictions on advertising of non-ADA-recognized "specialties," [because] Texas is not required . . . to reinvent the wheel." Defs.' Mot. Summ. J. [#46] at 13.

The problem for Defendants is that *Central Hudson* requires the submission of *evidence* tending to show that advertising as specialists in non-ADA-recognized specialties actually have the potential to mislead or confuse the public. The surveys presented in *Borgner* are not in the record and therefore are not evidence. Indeed, for the Court to rely on conclusions drawn from surveys not in evidence without making an independent evaluation of their applicability to the facts before it would be patent error.[4] The Court finds it especially inappropriate to do so where the district court found the surveys to be insufficient to satisfy constitutional standards—and, where Justices Thomas and Ginsberg dissented from the denial of certiorari on the grounds the plaintiff "raise[d] serious questions about the validity of the surveys on which the Eleventh Circuit relied." *See Borgner v Fl. Bd. of Dentistry*, 537 U.S. 1080, 1080 (2002). Further, as Plaintiffs point out, it is ironic to point to

---

[4] As an aside, the Court highlights the potential for the surveys in *Borgner* to hurt Defendants' case rather than to help it. Because they were conducted with the goal of legitimizing restrictions on the advertisement of non-ADA recognized credentials, the surveys apparently found that advertising AAID credentials in implant dentistry was misleading. *See Borgner*, 284 F.3d at 1212–13. Texas, however, permits dentists to advertise AAID credentials without requiring any disclaimer. Relying on such studies undermines Texas' current advertising regime because they suggest that the specialty advertising restrictions as written still have the potential to mislead consumers.

*Borgner* for support because the state dental board in that case commissioned an empirical study to substantiate the challenged rule, a tactic the State Dental Board and TSOMS have not taken here.[5]

Second, Defendants claim Rule 108.54 advances the state's substantial interest in creating a uniform standard of qualification for dental specialties and specialists. *Parker v. Ky. Bd. of Dentistry*, 818 F.2d 504, 510–11 ("[The state] has a substantial interest in enabling the public to distinguish between general practitioners and specialists."). Defendants argue that reliance on the ADA is a "reasonable solution that is neither ineffective in serving, nor remote from, the state's legitimate purpose." *See* Defs.' Mot. Summ. J. [#46] at 18. However, the state's prerogative to draw *a* line does not imply the right to draw *any* line; *Central Hudson* shifts the burden to the state to present more than a bald claim the chosen line is "reasonable." Defendants must present evidence establishing that the criterion chosen to demarcate between specialty dentists and general dentists—acceptance or recognition by the ADA—will actually help the public distinguish between dentists. *See Edenfield*, 507 U.S. at 771 (requiring the state to demonstrate "the ban imposed by th[e] rule advances its asserted interests in [a] direct and material way").

Attempting to meet this burden, Defendants argue the ADA's specialty recognition process, including accreditation by CODA, is a valid basis on which to distinguish general dentists and specialists because it is the industry standard for state dental advertising restrictions. Defendants cite a litany of state statutes purporting to limit dentist advertising to ADA-recognized specialty areas as well as to the American Association of Dental Board Guidelines on Advertising (AADB

---

[5] Neither party argues the factual situation *Borgner* is controlling here, nor could they. The Florida law at issue in *Borgner* permitted licensed dentists to advertise specialty practice or credentials by a non-ADA-recognized organization as long as they included a disclaimer that the particular practice was not recognized as a specialty by the ADA or the Florida Board of Dentistry. *Borgner*, 284 F.3d at 1207. Texas's specialty advertising restriction, by contrast, permits licensed dentists to advertise their non-ADA-recognized specialty credentials without any disclaimer but wholly restricts the right to advertise as a specialist in any specialty area not recognized by the ADA.

Guidelines). To the extent this is evidence of "consensus,"[6] it fails to establish that relying on the ADA to determine advertising specialty areas materially advances its substantial interest in helping distinguish between general practitioners and specialists. Defendants have presented no evidence the ADA's chosen list of specialties is accurate, based on standard and uniformly applied criteria, or will actually help the public properly distinguish between general practitioners and specialists by weeding out false, deceptive, or misleading claims.

In fact, the record suggests Rule 108.54 works in conjunction with Texas' dental licensing rules to increase confusion and perhaps even ban truthful claims. Licensed dentists may lawfully provide services to their patients in any area of dentistry, including dental implants, dental anesthesiology, oral medicine, and orofacial pain, and the State Dental Board has no authority to specify dental specializations; licensed dentists may exclusively practice in any of these four fields of dentistry. *See* Pls.' Mot. Summ. J. [#47-7] Ex. 8 at 6. Further, the State Dental Board has adopted the ADA's list of specialties without regard to whether the non-ADA-recognized fields are actually bona fide and meet standards of minimal competency. Taken together, this means Texas dentists may specialize in non-ADA-recognized fields, they are just prohibited from saying so. The incongruity between the rights of dental licensees to practice and the rights of dental licensees to advertise is confusing at best and perhaps even forces licensed dentists to misrepresent the nature of their practices.[7]

---

[6] The Court notes that Defendants have not demonstrated how any one of these statutes actually matches Rule 108.54 in terms of deference to the ADA, nor is there any suggestion the statutes are based on any empirical or anecdotal evidence. Similarly, the AADB Guidelines do not help Defendants because they would allow advertising non-ADA-recognized specialties with a disclaimer and are therefore less restrictive.

[7] This risk is exacerbated by 22 TEX. ADMIN. CODE § 108.55. Under this provision, a dentist who exclusively limits his or her practice to a non-ADA-recognized specialty area and wishes to advertise the services he or she provides must include the notation "General Dentist" in the advertisement. Such a notation risks misleading the public to believe a practitioner who only practices dental anesthesiology also provides general dentistry services.

**D.     Whether the Rule is More Extensive Than Necessary**

Even if Defendants had met their evidentiary burden, Rule 108.54 would nonetheless fail *Central Hudson*'s final prong, which requires Defendants to show the Rule is "not more extensive than is necessary to serve that interest." *Pub. Citizen*, 632 F.3d at 221 (citations omitted). The "fit" between the legislature's interests and the chosen regulation need not be perfect, but must be reasonable. *See Went for It*, 515 U.S. at 632. "[T]he existence of 'numerous and obvious less-burdensome alternatives to the restriction on commercial speech . . . is certainly a relevant consideration in determining whether the 'fit' between the ends and means is reasonable.'" *Id* (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993)).

For two reasons, the Court finds Defendants have not shown Rule 108.54 is not more extensive than necessary to serve the state's interest in eliminating confusion in the marketplace and creating uniform standards. First, requiring non-ADA-recognized specialists to include a disclaimer that their specialty area is not certified by the state or by the ADA would be a less extensive means of mitigating any potential confusion than an outright ban. Courts, including those in the Fifth Circuit, have placed the burden on the state to show a disclaimer would not alleviate concerns about deception. *See, e.g.*, *Pub. Citizen*, 623 F.3d at 223, 224 (finding the Louisiana Attorney Disciplinary Board's "conclusory statement that a disclaimer would not alleviate its concerns . . . [a]n unsupported assertion [that was] insufficient to satisfy [its] burden" and citing cases). Defendants have not carried their burden of showing why a disclaimer would be inappropriate in this case. Again, if the state was interested in protecting dental consumers from misleading advertisements, such an interest would be furthered by more disclosure, not less. *See Central Hudson*, 447 U.S. at 562 ("[P]eople will perceive their own best interests if only they are well enough informed, and the best means to that end is to open channels of communication, rather than close them.").

-19-

Second, and perhaps more importantly, Defendants have failed to explain why blind reliance on the ADA is not more stifling of commercial speech than is reasonably necessary. Defendants' sole argument on this point is that because it considers the ADA the "standard bearer" in the profession, the State Dental Board has preferred to "use the work that's already been done by the ADA rather than by doing the work itself." *See* Defs.' Mot. Summ. J. [#46] at 18, 22. While it may be reasonable for the state to rely on the ADA for choosing uniform standards or qualifications for distinguishing between specialty areas, Defendants' argument does not explain why it is reasonable to blindly defer to the ADA's choice of specialty areas; notably, this framework does not account for the risk that a non-ADA-recognized specialty board or credentialing organization could meet the standards of integrity set by the ADA but still not be recognized as a specialty for political or economic reasons. Wholesale deference to the ADA risks suppressing the truthful speech of dentists who have achieved high levels of training, education, or experience but have not successfully petitioned ADA for specialty recognition.

One obvious less-burdensome alternative would be to peg the term "specialty" or "specialist" to a set of statutory or regulatory qualifications that signify the credentialing board has met some uniform standard of minimal competence. *See Pain Mgmt.*, 353 F.3d at 1102 ("These regulations . . . specify both the criteria that the Medical Board of California will use to determine whether a certifying organization possesses requirements equivalent to those of the ABMS and the procedures that govern applications for an equivalency determination by the Medical Board of California."). Defendants have failed to offer a justification for choosing not to devise some set of uniform criteria for distinguishing between bona fide credentialing organizations other than "we don't want to do the work ourselves." Absent a more convincing reason or evidence to the contrary, the Defendants have

not met their burden of establishing that Rule 108.54 is "a reasonable fit between the legislature's ends and the means chosen to accomplish those ends." *Went for It*, 515 U.S. at 632.

**E.      Conclusion**

*Central Hudson* requires Defendants to establish Rule 108.54 directly advances its stated substantial interest in a manner no less extensive than necessary based on concrete evidence, not on mere speculation or conjecture. For whatever reason, Defendants have been content not to offer any competent evidence and have instead essentially asked the Court to "trust them" based their common sense and experience in the dental field. Such a meager showing cannot carry the day. *See Ibanez*, 512 U.S. at 146 ("If the protections afforded commercial speech are to retain their force, we cannot allow rote invocation of the words 'potentially misleading' to supplant the Board's burden to demonstrate the harms it recites are real and that its restriction will in fact alleviate them to a material degree.").

While the challenged restriction *might* be permissible in the abstract, it is not permissible on the record currently before the Court. *See Pub. Citizen*, 623 F.3d at 221 ("A regulation that fails *Central Hudson* because of a lack of sufficient evidence may be enacted validly in the future on a record containing more or different evidence."). Consequently, in light of the parties' cross-motions for summary judgment, and based upon the record and the briefing in this case, the Court must grant Plaintiffs' motion for summary judgment with respect to its First Amendment claims.

**III.     Fourteenth Amendment: Equal Protection**

Plaintiffs contend Rule 108.54 creates discriminatory classifications between dentists who have obtained designations as ADA-recognized specialists and those who have obtained professional dental credentials in an area of dentistry not recognized as a specialty by the ADA. Plaintiffs attempt to place the burden on Defendants to disprove their allegation, arguing that since a "regulation of

commercial free speech is subject to intermediate scrutiny in a First Amendment challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review." *See* Pls.' Mot. Summ. J. [#47] at 29 (quoting *Chambers v. Stengel*, 256 F.2d 397, 401 (6th Cir. 2001)).

However, the quoted language from *Stengel* does not accurately characterize Supreme Court and Fifth Circuit precedent. For purposes of an equal protection claim in the Fifth Circuit, "[u]nlike under [a] First Amendment challenge, [the state] need not 'articulate . . . the purpose or rationale supporting its classification[,]' as long as there is a 'reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Indeed, as this Court noted in a recent First Amendment and equal protection challenge to the Texas Alcoholic Beverage Code:

> with respect to the burden of proof [Plaintiffs'] Equal Protection challenges are the mirror image of their First Amendment challenges. That is, while Defendants had the burden of justifying, with evidence and argument, the [Rule's] speech-based regulations, [Plaintiffs] bear[] the burden of demonstrating there is no reasonably conceivable basis which might support the classifications in the challenged sections of the [advertising restrictions].

*Authentic Beverages Co. v. Tex. Alcoholic Beverages Comm'n*, 835 F. Supp. 2d 227, 247 (W.D. Tex. 2011).

It is "reasonably conceivable" the classifications made by the advertising restriction at issue are rationally related to the state's interest in ensuring the accuracy of commercial information in the marketplace, establishing uniform standards for certification, and protecting consumers from misleading professional advertisements. Because Plaintiffs have wholly neglected their obligation to negate the link between the challenged restriction and state's interests with any evidence, the Court finds summary judgment is due to be granted in favor of Defendants on Plaintiffs' Equal

Protection claims. *See Heller,* 509 U.S. at 320–21 ("A state . . . has no obligation to produce evidence to sustain the rationality of a statutory classification. . . .   A statute is presumed constitutional, and the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it, whether or not the basis has foundation in the record.").

## IV.   Fourteenth Amendment: Standardless Delegation

Finally, the Court turns to Plaintiffs' due process claim, which is limited to one issue: whether Rule 108.54 is an unconstitutional delegation of legislative authority to the ADA.[8] Pls.' Reply [#61] at 7.  Plaintiffs argue Rule 108.54 delegates to the ADA the exclusive authority to determine the government's official position with regard to what dental fields may be advertised as "specialties," which in turn controls which dentists may advertise as "specialists."  According to Plaintiffs, this framework is constitutionally deficient because it assigns legislative power to the ADA, a private dental organization in direct competition with plaintiffs, to determine what is non-misleading information in Texas dental advertisements without attaching any meaningful standards or state mechanism for review.  Plaintiffs base this theory on a series of *Lochner*-era cases which "stand for the proposition that a legislative body may not constitutionally delegate to private parties the power to determine the nature of rights to property in which other individuals have a property interest, without supplying standards to guide the private parties' discretion." *General Elec. Co. v. N.Y. State Dep't of Labor*, 936 F.2d 1448, 1456 (2d Cir. 1990) (citing *Eubank v. City of Richmond*, 226 U.S. 143 (1912); *Seattle Title Trust Co. v. Roberge*, 278 U.S. 116 (1928)).

---

[8]  Based on Plaintiffs' pleadings, Defendants initially moved to dismiss three types of due process claims: (1) procedural; (2) substantive; (3) standardless delegation.  *See* June 20, 2015 Order [#23] at 7.  While the Court refrained from limiting the scope of Plaintiffs' due process claims at the motion to dismiss stage, the parties now agree Plaintiffs' sole theory of recovery under the Due Process clause is for standardless delegation.

The facts before the Court are not on all fours with this general proposition—the State Dental Board has not delegated any legislative or rulemaking power to the ADA to determine the state's position vis-à-vis which dental advertisements are misleading. *See Dep't of Transp. v. Ass'n of Am. R.Rs.*, 135 S.Ct. 1225, 1237 (2015) (Alito, J., concurring) (characterizing legislative delegation as the "handing off [of] regulatory power to a private entity"); *see also Biener v. Calio*, 361 F.3d 206, 216 (3rd Cir. 2004) ("The Due Process Clause limits the manner and extent to which a state legislature may delegate legislative authority to a private party acting as a state actor."). When the ADA votes to recognize a dental specialty, it is not exercising Texas' rule-making authority to limit the scope of a dental licensee's rights delegated to it by the State Dental Board.

Rather, the State Dental Board has made a voluntary legislative decision to rely on the ADA's professional judgment with regard to what disciplines should be recognized by specialties for purposes of professional advertising. *See Kiser*, 2015 WL 1286430, *5 ("The ADA merely publishes a list of specialties, and individual states have the opportunity to use that list for lawmaking purposes."); *see also Ponzio v. Anderson*, 499 F. Supp. 407, 409 (N.D. Ill. 1980) (rejecting an argument the state improperly delegated its legislative function to an independent entity by relying on a dentist license examination prepared by a private corporation to determine the qualifications and fitness of applicants for dental licenses). Plaintiffs have provided the Court with no authority suggesting this is a violation of federal due process. Accordingly, the Court finds summary judgment should be granted in Defendants favor on Plaintiffs standardless delegation claim.

## V.    Conclusion

The right to advertise as a specialist in Texas is undoubtedly a financial boon to dentists in the state. While ostensibly promulgated to protect consumers from misleading speech, it appears

from the dearth of evidence that Rule 108.54's true purpose is to protect the entrenched economic interests of organizations and dentists in ADA-recognized specialty areas. Indeed, Defendants have presented little more than industry bias in favor of the ADA to support the argument Plaintiffs' desired speech is deceptive, false, or misleading or that the State Dental Board can trust the ADA to carve out specialty areas without the need to make any substantive determination of whether the Plaintiffs' dental organizations are actually bona fide. The First Amendment demands more.

Consequently, considering the record in this case, the Court finds Plaintiffs First Amendment claim succeeds on its merits and grants Plaintiffs' motion for summary judgment on this claim. Consequently, the Court finds Texas Administrative Code § 108.54 is an unconstitutional restriction on free speech and enjoins its enforcement. Plaintiffs' remaining Fourteenth Amendment claims are without merit, and thus the Court grants summary judgment in favor of Defendants as to these claims.

Accordingly,

IT IS ORDERED that Defendants and Intervenor Defendants' Motions for Summary Judgment [#46, 53] are GRANTED IN PART and DENIED IN PART, as described in this opinion;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [#47] is GRANTED IN PART and DENIED IN PART, as described above in this opinion;

IT IS FURTHER ORDERED that Texas Administrative Code § 108.54 is an unconstitutional restriction on Plaintiffs' First Amendment right to free commercial speech;

IT IS FINALLY ORDERED that Defendants are ENJOINED from enforcing Texas Administrative Code § 108.54 to the extent it prohibits Plaintiffs from advertising as

specialists or using the terms "specialty" or "specialist" to describe an area of dentistry not recognized as a specialty by the American Dental Association, or any other provision of Texas law inconsistent with this opinion.

SIGNED this the 21ˢᵗ day of January 2016.

SAM SPARKS
UNITED STATES DISTRICT JUDGE